IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| MICHAEL L. JONES, # 259166, | ) | Civil Action No. 3:04-1830-25BC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ANGELIA JOHNSON-COVINGTON, | ) | |
| SERGEANT (SGT.) AT EVANS | ) | |
| CORRECTIONAL INSTITUTION; AND | ) | |
| CALVIN QUICK, LIEUTENANT AT | ) | |
| EVANS CORRECTIONAL | ) | |
| INSTITUTION, | ) | |
| Defendants. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Plaintiff, Michael L. Jones, filed this action under 42 U.S.C. § 1983[1] on June 15, 2004.

At the time of the alleged incidents, Plaintiff was housed in the Special Management Unit

("SMU") at the Evans Correctional Institution of the South Carolina Department of Corrections

("SCDC").    Defendants, Sergeant Angelia Johnson-Covington ("Johnson-Covington") and

Lieutenant Calvin Quick, are employed by SCDC.  On October 22, 2004, Defendants filed a

motion for summary judgment.  Plaintiff, because he is proceeding pro se, was advised on October

25, 2004, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to

respond to Defendants' motion for summary judgment with additional evidence or

---

[1]Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(d) and(e), DSC.  Because this is a dispositive motion, this report and recommendation is entered for review by the court.

counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on December 2, 2004.[2]

## DISCUSSION

Plaintiff's allegations concern the handling of his mail, specifically the delivery of books. He alleges that Defendants' actions violated his constitutional rights. Defendants argue that they are entitled to summary judgment because: (1) Plaintiff fails to show that any withholding of his books violated his constitutional rights; (2) Plaintiff cannot recover damages for psychological and emotional distress under the Prisoner Litigation Reform Act; (3) Defendants are entitled to Eleventh Amendment immunity in their official capacities; (4) Defendants are entitled to qualified immunity; (5) Plaintiff is not entitled to a preliminary injunction;[3] and (6) any state claims should be dismissed.

1.    Mail/Book Claims

Plaintiff alleges that Johnson-Covington opened a package addressed to him and refused to give him the two books that were enclosed. He writes that Johnson-Covington told him that he could not have the books until he turned in other books he had; he informed Johnson-Covington that all of his books had been taken from him during a cell search;

---

[2]In his response, Plaintiff appears to be requesting a jury trial. He made a request for a jury trial in his complaint. See Complaint at 5. The Clerk of Court is directed to correct the docket sheet to indicate that a jury trial has been demanded. See Fed. R. Civ. P. 38 and 39.

[3]To the extent that Plaintiff is requesting a preliminary injunction, such relief should be denied because it is unlikely that he will be successful in the underlying dispute between the parties, as discussed below, and he is unlikely to suffer irreparable injury if interim relief is denied. See Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997); Hughes Network Systems, Inc. v. InterDigital Communications Corp., 17 F.3d 691, 693 (4th Cir. 1994); North Carolina State Ports Auth. v. Dart Containerline Co., Ltd., 592 F.2d 749 (4th Cir. 1979); and Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977)

Johnson-Covington stated she placed the package in the control room; she later told Plaintiff that the package was no longer in the control room; she gave Plaintiff two books from another inmate; Plaintiff returned the books to the other inmate; Johnson-Covington voiced her disapproval of Plaintiff's actions; and Johnson-Covington told Plaintiff that the books had been stolen by the other inmate and were Plaintiff's books.  Plaintiff alleges that Johnson-Covington was not qualified, trained, or authorized to open his mail.  Johnson-Covington states that due to fire and safety considerations, an inmate is only allowed a limited number of books.  She provides that on the date of the alleged incident, Plaintiff received what appeared to be a book in a brown paper wrapper; as contraband can be hidden in packages, it is SCDC policy for correctional officers to open packages and check for contraband; and her check of Plaintiff's cell revealed he had fifteen books (more than the maximum allowed in the SMU).  Johnson-Covington informed Plaintiff that it was necessary for him to return some books before he could receive his new book, she took the new book and placed it in a locked cabinet, Plaintiff received his book one day later after he turned in other books, and Plaintiff only had a delay in receiving a book due to his non-compliance with SCDC policy.

Plaintiff does not allege that any of the SCDC policies and procedures for handling mail are unconstitutional,[4] but appears to allege that Defendants' failure to follow these policies violated his constitutional rights.  Allegations that SCDC defendants have not followed their own policies

---

[4]Regulations affecting incoming mail are valid if they are reasonably related to a legitimate penological interest.  See Thornburgh v. Abbott, 490 U.S. 401 (1989); Turner v. Safley, 482 U.S. 78 (1987).  Prison officials are given considerable deference in regulating the delicate balance between prison order and the demands of outsiders who seek to enter the prison environment.  Thornburgh, supra. Here, SCDC policies for opening mail to prevent contraband and to limit the number of books an SMU inmate can have at one time to protect the health and safety of all inmates appear to be reasonably related to legitimate penological interests.

or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

Plaintiff also fails to show that any deprivation of books violated his constitutional rights. Deprivations of personal property, including negligent deprivations of personal property, do not support an action for damages under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986). Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327 (1986); Ruefly v. Landon, 825 F.2d 792, 798-94 (4th Cir. 1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995). Furthermore, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago Dep't. of Social Services, 489 U.S. 189, 200-203 (1989).

Plaintiff also appears to allege that he was subjected to cruel and unusual punishment because he was denied access to certain books. The Eight Amendment provides protection with respect to "the treatment a prisoner receives in prison and the conditions under which he is confined." Helling v. McKinney, 509 U.S. 25, 31 (1993). However, the constitutional prohibition against the infliction of cruel and unusual punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Eighth Amendment protection from cruel and unusual living conditions

4

has both objective and subjective components. First, deprivations must be objectively serious in the sense that they violate contemporary notions of decency. Rhodes v. Chapman, 452 U.S. 337 (1981). A plaintiff must produce evidence of serious or significant physical or emotional injury resulting from the challenged conditions to withstand summary judgment on a prison living conditions claim. Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993). Second, a plaintiff must show that subjectively the prison officials acted with a sufficiently culpable state of mind. Id. at 1379. The Supreme Court has held that prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Plaintiff has not shown that his Eighth Amendment rights were violated because he failed to produce evidence of any serious physical or emotional injuries resulting from a deprivation of his books and he has not shown that Defendants knew of and disregarded an excessive risk to his health or safety. He claims that Defendants' actions subjected him to psychological violation and emotional distress. There is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish, and, hence, there is no liability under § 1983 regarding such claims. See Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir. 1985), cert. denied, 480 U.S. 916 (1987); and Rodriguez v. Comas, 888 F.2d 899, 903 (1st Cir. 1989). The PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.[5]

---

[5]The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be
(continued...)

2.     Grievance

Plaintiff claims he filed a grievance concerning his books, but it was not processed. Plaintiff fails to show his constitutional rights were violated concerning the grievance process. The "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Even assuming that Defendants violated SCDC grievance procedures, such actions do not state a claim which is actionable under § 1983. See Brown v. Dodson, 863 F. Supp. 284 (W.D.Va. 1994).

3.     Immunity

Defendants argue that they are entitled to Eleventh Amendment immunity in their official capacities. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its

---

[5](…continued)
significant. Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997)(concluding that a sore, bruised ear lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering); see also Zehner v. Trigg, 952 F. Supp. 1318 (S.D. Ind. 1997)(exposure to asbestos not physical injury necessary to support claim for mental or emotional injury under the PLRA), aff'd, 133 F.3d 459 (7th Cir. 1997).

immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity.  Id. at 70.  In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state.  State officials may only be sued in their individual capacities.  Defendants are entitled to Eleventh Amendment immunity from monetary damages.

Defendants also argue that they are entitled to qualified immunity.  The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged."  Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent."  As such, if there is a "legitimate question" as to whether an

7

official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995).  As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights.  Therefore, Defendants are entitled to qualified immunity in their individual capacities.

4.    State Claims

Plaintiff asserts a tort claim under South Carolina law.  Complaint, at 4.  As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above), only potential state law claims would remain.  Thus it is also recommended that, pursuant to 28 U.S.C. § 1367(c)(3), any remaining state law claims be dismissed.

## CONCLUSION

Based on review of the record, it is recommended that  Defendants' motion for summary judgment (Doc. 17) be granted.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

March 25, 2005
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

8

## <u>Notice of Right to File Objections to Magistrate Judge's Report and Recommendation</u>
## <u>&</u>
## <u>The Serious Consequences of a Failure to Do So</u>

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing.  28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail.  Fed. R. Civ. P. 6.  Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed.  <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992).  A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge.  See <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, <u>but</u> <u>not</u> <u>thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections.  Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.  Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge.  See <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985).  Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object.  In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues.  <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508-509 (6th Cir. 1991).  See also <u>Praylow v. Martin</u>, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985).  In <u>Howard</u>, <u>supra</u>, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object.  The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless.  * * *  This duplication of time and efforts wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.  * * *  We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* <u>Lockert v. Faulkner</u>, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review.  * * *  A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

<u>See</u> <u>also</u> <u>Branch v. Martin</u>, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and <u>Goney v. Clark</u>, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").  This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.  See <u>Wright</u>, <u>supra</u>,; and <u>Small v. Secretary of HHS</u>, 892 F.2d 15, 16 (2nd Cir. 1989).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**901 Richland Street**
**Columbia, South Carolina 29201**
